In the Interest of B.M., Minor Child,

**L.M., Mother, Appellant.**

No. 94–1750.

Court of Appeals of Iowa.

March 30, 1995.

Nancy L. Burk, Toledo, for appellant.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., Judy Sheirbon, Asst. Atty. Gen., and Brent Heeren, County Atty., for appellee-State.

Mark W. Lindholm of the Allbee Law Firm, Marshalltown, guardian ad litem, for minor child.

Heard by SACKETT, P.J., and CADY and HUITINK, JJ.

HUITINK, Judge.

LaDonna appeals a juvenile court order terminating her parental rights to Bradley born in March 1991. Bradley's father, Larry, is not a party to this appeal. We reverse and remand with instructions.

LaDonna is an enrolled member of the Sac and Fox Tribe of Oklahoma. Bradley became an enrolled member of this tribe in July 1994. He is also an eligible member of the Mesquaki Nation of the Sac and Fox Tribe of Iowa.

In early November 1991 LaDonna left Bradley in the care of his great-grandparents, Agnes and Isaac, who live on the Mesquaki settlement. LaDonna moved to Marshalltown to live with her sister but returned to retrieve Bradley after a few weeks. Agnes and Isaac did not believe LaDonna could properly care for Bradley and refused to turn him over to her. They informed the department of human services of the situation. The State filed a child in need of assistance petition in December 1991 alleging LaDonna had abandoned or deserted Bradley and that she was in need of treatment for a substance abuse problem.

After a January 1992 hearing the court placed Bradley in the custody of his great-uncle, Charles. Bradley was adjudicated CINA in February, and his custody was continued with Charles. LaDonna did not appear at either of these proceedings.

In September 1992 at Charles' request, the court placed Bradley in the custody of Agnes and Isaac. In the summer of 1992 LaDonna moved to Oklahoma. She returned to Iowa in late December 1992 and completed a substance abuse evaluation. The evaluators recommended she receive inpatient substance abuse treatment. LaDonna agreed but stated she first had to drive her mother back to Oklahoma. She did not return for treatment.

The State filed a termination petition in February 1994. LaDonna filed a motion to transfer jurisdiction and dismiss arguing Bradley was eligible for membership in the Sac and Fox Tribe of Oklahoma and a transfer was required by the Indian Child Welfare Act (ICWA). That tribe wrote to the court stating it chose not to intervene in the proceeding. The court interpreted this letter to mean the Tribe declined to exercise jurisdiction over the matter and denied LaDonna's motion.

LaDonna filed a new motion for transfer of jurisdiction and dismissal after she received

a letter from the Sac and Fox Tribe of Oklahoma clarifying its earlier letter. In this letter the Tribe explained it had declined to intervene but had not yet made a decision about whether it would accept jurisdiction.

At the July 1994 termination hearing Agnes testified LaDonna had seen Bradley four times since he had been in their custody. Agnes stated she and Isaac are teaching Bradley the Mesquaki language and he participates with them in tribal ceremonies. Donald Wanatee, a representative of the Sac and Fox Tribe of Iowa, stated he thought Bradley should remain with his great-grandparents. The department social worker testified LaDonna had not followed through with the case permanency plan and recommended termination of her parental rights.

The court found good cause not to transfer jurisdiction because the evidence necessary to decide the case could not be adequately presented in the tribal court without undue hardship to the parties or the witnesses. The court found beyond a reasonable doubt that LaDonna's parental rights should be terminated pursuant to Iowa Code sections 232.116(1)(b), (d), (g), and (k) (1993). Custody and guardianship of Bradley were placed with Agnes and Isaac.

■ Appellate review of termination proceedings is de novo. *In re W.G.,* 349 N.W.2d 487, 491 (Iowa 1984) *cert. denied sub nom. J.G. v. Tauke,* 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d 353 (1985). We give weight to the findings of fact of the juvenile court, especially when considering the credibility of witnesses, but we are not bound by those determinations. *Id.* at 491–92.

■ Our primary concern in termination proceedings is the best interest of the child. Iowa R.App.P. 14(f)(5); *In re Dameron,* 306 N.W.2d 743, 745 (Iowa 1981). In deciding what is best for the child, we look to the child's long-range as well as immediate interests. *In re A.M.S.,* 419 N.W.2d 723, 726 (Iowa 1988). In this case Iowa statutory and case law is modified by the provisions of the ICWA. *In re J.W.,* 528 N.W.2d 657, 659 (Iowa App.1995).

■ The provisions of the ICWA are to be strictly construed and applied. *In re J.W.,* 498 N.W.2d 417, 421 (Iowa App.1993) (citation omitted). In applying the ICWA we seek to accomplish the dual objectives of the Act: (1) to protect the best interests of Indian children and (2) to promote the stability and security of Indian tribes and families. *See In re J.W.,* 528 N.W.2d at 660.

LaDonna first contends the juvenile court erred when it denied her motion to transfer jurisdiction of the case to the Oklahoma tribal court for good cause. We disagree.

■ The ICWA requires the state to transfer "proceeding[s] for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing with the reservation of the Indian child's tribe" to the jurisdiction of the tribe "absent good cause to the contrary." 25 U.S.C. § 1911(b). After a careful consideration of the circumstances of this case we, like the juvenile court, find good cause exists not to transfer this case to the tribal court.

Transfer of jurisdiction would result in undue hardship to Bradley and the witnesses. All of the evidence is located in Iowa, and all of the essential witnesses but for LaDonna reside in Iowa. The Sac and Fox Tribe of Oklahoma does not have the power to subpoena witnesses outside of its jurisdiction. The Iowa Department of Human Services has had extensive contact with Bradley, Agnes, and Isaac, as well as other members of Bradley's extended family.

Unlike many other cases involving the ICWA, the child at issue has remained in a home in which he is raised in an Indian culture. The Sac and Fox Tribe of Oklahoma has had little contact with this family, but Bradley has been immersed in the culture of the Mesquaki Nation of the Sac and Fox Tribe here in Iowa. Donald Wantatee has been an active participant in this case which has protected against state court bias against tribal culture. The evidence suggests that LaDonna's insistence on transferring jurisdiction to the Oklahoma tribal court is an abuse of the provisions of the ICWA. Clearly Bradley is not being deprived of his Indian culture. A transfer would only delay the process, which is not in Bradley's best interests. Under these circumstances, the

juvenile court had good cause to retain jurisdiction. *See In re J.W.*, 528 N.W.2d at 661.

■ LaDonna also contends the juvenile court erred in terminating her parental rights. The record shows LaDonna has failed to comply with the case permanency plan, continues to deny she has a substance abuse problem, and has, for all practical purposes, abandoned Bradley. However, the unique circumstances of this case lead us to conclude all of the objectives of the ICWA can be accomplished without terminating LaDonna's parental rights.

Testimony revealed that under the extended kinship system of the Sac and Fox Tribe leaving a child in the care of extended family is common. Bradley's family is an example of this practice. LaDonna and her sister Dawn were left in the care of Agnes and Isaac by their own mother. In addition, Dawn has left her own daughter in Agnes and Isaac's care, even though she lives close to the Mesquaki settlement in Marshalltown.

It is not in Bradley's best interests to be returned to LaDonna's custody at this time or in the near future. However there are no compelling circumstances which lead us to conclude it is in Bradley's best interests to terminate LaDonna's parental rights. At the present time Agnes and Isaac are the proper custodians for Bradley, and he sees them as his parents. However, they are both close to seventy years of age, and it is questionable whether they will be able to parent Bradley until he reaches the age of majority.

■ A long-term permanency order placing Bradley in the custody of his great-grandparents is the more appropriate option in this case. We are bound to protect and promote "the stability and security of [both] Indian tribes *and* families" whenever possible. A permanency order guarantees Bradley will be raised in the culture of the Sac and Fox Tribe of Iowa, yet preserves his ties to LaDonna and the Sac and Fox Tribe of Oklahoma.

There is an opportunity for LaDonna to receive help for her substance abuse problem and establish a relationship with Bradley. If Agnes and Isaac are unable to care for Bradley in the future for some reason, LaDonna might be in a position to properly parent Bradley. We do not believe that Bradley's best interests will be served by the termination of LaDonna's parental rights. *See In re S.J.*, 451 N.W.2d 827, 832–33 (Iowa 1990).

Accordingly, we reverse the juvenile court order terminating LaDonna's parental rights. The juvenile court is instructed to dismiss the termination action and enter a permanency order placing Bradley in the long-term custody of his great-grandparents.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**